(No. 31993.—

Jacob Verh *et al.,* Appellees, *vs.* Milo Morris, Appellant.

*Opinion filed September 21, 1951—Rehearing denied Nov. 19, 1951.*

Davison & Davison, John W. Curren, Keith H. Dressendorfer, and A. M. Fitzgerald, all of Springfield, (Eugene L. Davison, of counsel,) for appellant.

G. W. Horsley, and L. G. Pefferle, both of Springfield, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The plaintiffs, Jacob Verh and four others, filed their complaint in the circuit court of Sangamon County against the defendant, Milo Morris. The issue made by the pleadings was whether a certain strip of land is a public roadway or a private lot. A decree was entered adjudging the controverted tract a public highway, restraining defendant from further obstructing its use and perpetually enjoining him from allowing barricades, trailers, buildings, and any other obstructions to remain upon the roadway. Defendant prosecutes this appeal. A freehold is necessarily involved. *Phillips* v. *Leininger,* 280 Ill. 132.

The roadway, known as Fourth Street, and for purposes of convenience also described as lot 13, is approximately 66 feet wide, 656 feet long, runs in a northerly and southerly direction, and extends from Apple Orchard Road on the north to Garrett Street on the south, in Woodside township, slightly beyond the city limits of Springfield. Fourth Street is adjacent to and divides the property of plaintiffs. At the time of the purchase of their property more than thirty years ago, two of the plaintiffs were furnished with a plat showing South Fourth Street between Garrett Street and Apple Orchard Road to be a roadway. Fourth Street affords the only reasonable means of ingress to and egress from certain buildings and premises owned by plaintiffs. Since January 1, 1933, title to Fourth Street or lot 13 has been in the Springfield Marine Bank as trustee of the estate of George Pasfield. Taxes on the property have been paid by the owner of record.

Plaintiffs' complaint alleged that Fourth Street had been constantly used as a public roadway for more than thirty years, without vacation or abandonment, and that defendant had obstructed the road for commercial purposes, making it unusable by the public. The relief sought was an injunction requiring defendant to restore the roadway and

to refrain from obstructing it. Defendant's answer denied the material allegations of the complaint. The cause was referred to a master in chancery who recommended the entry of a decree in accordance with the prayer of plaintiffs' complaint. Objections to the master's report were ordered to stand as exceptions. The chancellor overruled the exceptions, and entered the challenged decree.

Determination of whether Fourth Street is a public roadway or private lot requires a brief review of the evidence. According to a former road commissioner of Woodside township for the years 1924 to 1932, he opened a ditch on each side of the road between 1924 and 1928 incident to grading it. He testified that the property was used as a road thereafter until his term of office expired in 1932. Jacob Verh, one of the plaintiffs, the owner of approximately five acres contiguous to the west side of Fourth Street, stated that he personally used Fourth Street as early as 1918, and that there had never been a time since 1919 when it had not been used for public road purposes. Verh testified that George Pasfield, from whom he purchased his property in 1919, said that he wanted to keep Fourth Street open as a street in order to be able to reach the forty acres he owned to the south. Jesse W. Cowie, who operated a grocery store and delivered groceries to the area, testified that, between 1926 and 1936, he made use of Fourth Street as a road, and that it had been used continuously to date. Vernon Grissom, road commissioner of the township from 1932 to 1939, testified that the property had been laid out and graded as a street when he took office; that he graded it several times a year and oiled part of it, and that it was not barricaded except during the installation of a sanitary sewer which went through the middle of the street. Grissom also testified to the use of Fourth Street as a roadway from 1924 to 1932. Daniel J. Holmes testified that he had been using the roadway since 1929, traveling over it twice a week for more than twenty

years, and that he did not know of any barricades until about a year ago. Another plaintiff, Rose Verh, testified that lot 13 was graded the first time during the '20's; that permission to use it as a road was never sought, and that it had always been used for travel except when a water main was being installed in 1939. Mrs. Verh testified that Pasfield described the road as South Fourth Street when she and her husband bought their property. Sylva Miller, whose property extends to Fourth Street, testified that she imagined lot 13 had been used as a street for twenty-one years or longer. Indeed, defendant himself testified, "I did not have any doubt in my mind about it being a road."

Eugene Groat, a roadgrader under the township commissioners, was one of defendant's witnesses. He testified that lot 13 had been open as a roadway for twenty-one years prior to 1945, stating, however, that he did not know about its use. Robert Saner, a trust officer of the Springfield Marine Bank, testified that there had always been "this condition whether it was a road, or whether it was not a road," and that the trust which had held title since 1933 would go "hot and cold" on whether it was a street. According to Saner, the trustee-owner had never given anyone permission to use Fourth Street as a street or acquiesced in such use.

A sewer was laid in Fourth Street in 1939. An engineer for the Springfield Sanitary District testified that no permission to lay the sewer was obtained. A gas main was laid without any easement or permission other than from the township commissioner. Homer Mendenhall, a former road commissioner, testified that during his tenure of office, from 1939 to 1943, lot 13 was used as a road; that it may have been barricaded a time or two; that he did not know who erected the barricade but that, in any event, it was soon taken down. Rose Verh testified that lot 13 was barricaded once during the last three or four

years but that the barricade was up but a few days when it was torn down. Joseph Runkel, one of the plaintiffs, owner of property adjacent to and east of lot 13 since 1942, testified that it was then used as a street; that he had used it ever since, and that he never saw a barricade on the street previous to the time one was placed there by defendant. Jacob Verh testified that the road was barricaded in the '20's for perhaps a week. Robert Saner testified that, on January 20, 1943, the bank, as trustee of the Pasfield estate, ordered its employees to barricade lot 13; that, in the evening, he went to the lot and found the holes where the posts had been placed for the barricade; but that the posts had been taken down by someone and thrown away.

On September 23, 1948, Milo Morris purchased lot 13 for $1000 and received a deed from the bank as trustee of the Pasfield estate. He bought the property for the purpose of building houses on it. Morris testified that he had started two houses and expended between $2000 and $3000, most of it since this action was instituted. He had spent $135 prior thereto. Morris testified further that when he bought the property he was advised by the bank the lot had been barricaded properly; that "I knew people went through there," and that he knew at least one of the plaintiffs had used it as an outlet. When Morris started to build in April, 1949, he placed barricades at either end and in the middle of lot 13.

Upon the basis of the foregoing and other testimony, the master found that Fourth Street or lot 13 had been continuously used as a roadway since 1924 until the erection of barricades in April, 1949, except for the barricade erected by the Springfield bank for a day or a few days in 1943.

Plaintiffs maintain that through adverse, uninterrupted, continuous and exclusive use, a highway has been estab-

lished by prescription over the area in question. Defendant contends that the evidence is insufficient to prove the requisite adverse use.

Section 139 of the Roads and Bridges Act, (Ill. Rev. Stat. 1949, chap. 121, par. 152,) which provides, "All roads in this state * * * which have been established by dedication or used by the public as highways for fifteen (15) years, * * * are hereby declared to be public highways," has been a part of the statute since its enactment in 1913. An amendment to section 139 in 1947 did not affect the quoted language.

Where a roadway is shown to have been openly and notoriously used as an open public highway by the public for the statutory period of fifteen years, it will be considered a public highway. (*Van Amburg* v. *Reynolds,* 372 Ill. 317; *Lee* v. *Dickman,* 316 Ill. 529.) The test is not the number of persons actually using the road, but the character of the use, namely, whether or not the public, generally, have had the free and unrestricted right to use the road. (*Van Amburg* v. *Reynolds,* 372 Ill. 317; *Lee* v. *Dickman,* 316 Ill. 529; *Phillips* v. *Leininger,* 280 Ill. 132.) The nature of the use of land by the public and the knowledge of the landowner of such use may be inferred from the manner, character and frequency of the exercise of the right and from the situation of the parties. (*Thorworth* v. *Scheets,* 269 Ill. 573.) A presumption arises that the use was prescriptive, and the burden rests upon those who deny the existence of a public highway to show that the use was under some license or indulgence inconsistent with a claim of right by the public. (*Van Amburg* v. *Reynolds,* 372 Ill. 317; *Lee* v. *Dickman,* 316 Ill. 529; *Thorworth* v. *Scheets,* 269 Ill. 573.) The mere fact that no objection was raised is insufficient to show a permissive use. (*Thorworth* v. *Scheets,* 269 Ill. 573.) Here, there was no attempt to show use by license, permission or indulgence. The fact

that a road is worked by township authorities, the same as other public roads, is a strong indication that it is a public highway. *Phillips* v. *Leininger,* 280 Ill. 132.

It is not every slight or occasional use of the land, even by the owner, which will constitute an interruption of the public use. Mere intermission is not interruption. (*Township of Madison* v. *Gallagher,* 159 Ill. 105.) It must appear that the claimant of the right of way has acquiesced in the interruption in such manner as to make the subsequent use merely permissive. The act of an individual in obstructing a highway cannot divest the public of its right therein, unless the obstruction is submitted to for such a period of time as to raise a fair presumption of abandonment. (*Power* v. *Watkins,* 58 Ill. 380.) In the present case, lot 13, with the exception of a day, or at best a few days, in 1943, when barricaded, has been used as a highway. The use was open, adverse and continuous for about twenty-five years, namely, from 1924 to 1949. Defendant was aware of the use of lot 13 when he purchased it. As in *Lee* v. *Dickman,* 316 Ill. 529, there is no evidence to indicate that permission was either sought or given to use lot 13 as a road. On the other hand, it was used as a road without any attempt to obtain permission, and the fact that no objection was interposed is insufficient to show a permissive use. There is considerable competent testimony in the record to the effect that when persons moved into the neighborhood they used lot 13 as a roadway without obtaining permission from anyone so to do.

Defendant contends that the placing of barricades and obstructions from time to time indicates that any use of the area, either public or private, was interrupted and that such assertion of ownership was notice of a claim of title and intent. Such interruption as occurred in 1943, when the barricades were caused to be erected by the bank, is far from a sufficient interruption of the use of a roadway to toll the running of the statute.

Defendant complains that the master was in error in selecting the year 1924 as the date for the commencement for adverse user. Ample evidence supports this finding of fact in the testimony of the witness who was road commissioner of Woodside from 1924 to 1932, of his successor-commissioner from 1932 to 1939, and others. Indeed, there is testimony by three witnesses that lot 13 was used as a roadway approximately six years earlier than the date fixed by the master as the beginning period for adverse user.

We are of the opinion that there is sufficient evidence to sustain the finding of fact of the master that the use of Fourth Street or lot 13 by the public has been adverse and continuous, without permission from the owner since 1924. The interruption of the use in 1943 was exceedingly slight. That the township authorities worked the roadway fortifies the conclusion lot 13 was then considered a public highway of the township.

The decree of the circuit court of Sangamon County is affirmed.

*Decree affirmed.*