202

(No. 33676.—

FRANK ROMADKA et al., Appellees, vs. MYRA H. JENSEN SCHROFF et al., Appellants.

Opinion filed November 23, 1955

EVA L. MINOR, of Kankakee, for appellants.

T. R. JOHNSTON, of Kankakee, for appellees.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

By their suit in the circuit court of Kankakee County, the plaintiffs (lot owners in a platted subdivision known as the South Shore Subdivision) sought to compel the defendants (daughters of and successors in title to the original subdivider) to remove fences obstructing certain subdivision roads (one of which is called South Shore Drive) and to enjoin the defendants from interfering with the use of said drive as a public highway.

The court found South Shore Drive to be a public highway, ordered the defendants to remove the fences, and commanded them to refrain from causing further obstructions. A freehold being involved, this court has jurisdiction on direct appeal. *Verh* v. *Morris,* 410 Ill. 206.

The South Shore Subdivision, consisting of five blocks, extends in a general easterly and westerly direction for 3400 feet along the south bank of the Kankakee River, about 2½ miles west of Momence. A blacktop surfaced highway known as the "river road" runs along the northern portion of the area, parallel with the river. Some 260 feet to the south and parallel to the river road, is South Shore Drive. The latter is 40 feet wide. Between these two roads, as platted, is the subdivision. There are two rows of lots (each lot 40 feet wide, east to west, and 120 feet deep, north to south); and between the two rows is a 20-foot alley running east and west. There are four streets (called "Courts") running north and south which separate the blocks and extend 260 feet from the river road to South Shore Drive. To the south of the subdivision property is farm land owned by the defendants.

In 1926 and for several years prior thereto all this land

was owned by Neil Jensen, the defendants' father, and devoted to farming. During 1926, however, he had it surveyed, designated blocks and lots, streets and driveways, and prepared a plat of the South Shore Subdivision. His plat instrument declared: "The drives known as courts are dedicated to the use of the lot owners and their guests. The South Shore Drive is hereby dedicated to the general public for a highway." His realtor fenced the entire area, graded roads, laid out lots on the ground, and put a culvert under South Shore Drive. Lots were sold by Jensen from 1926 until his death in 1938, and thereafter his daughters continued selling them. The deeds to purchasers, describing the lots, made reference to the plat, the deed forms having the subdivision references printed on them.

However, the subdivision was not an altogether successful venture. Some of the lots were never sold for homes. The maypole and swings in a small park area fell down and were never replaced. While a 32-inch steel culvert was placed in a creek on the west end, no bridge was ever constructed over it. For several years now there has been no grading of South Shore Drive, and it is seldom used, being described by some witnesses as impassable. Yet east of the area is a golf course, and there has been talk of its being expanded toward the South Shore Drive area.

In asking us to reverse the trial court, the defendants urge the following as a basis for error: (1) lack of necessary parties; (2) lack of evidence of material allegations, particularly as regards no proof of injury to the plaintiffs and no prospective benefit to them; and (3) *laches* and limitations.

The defendants contend that three wives of the plaintiffs, who are joint tenants with them, were not made parties; therefore, necessary parties were not before the court. But all three wives testified on behalf of their husbands, and if they are materially affected by the decree, the effect will be beneficial. In any event, they are "so far

represented by others that his [their] interest receives actual and efficient protection * * *." *Mortimore* v. *Bashore,* 317 Ill. 535, 540.

The defendants next claim that there was no evidence connecting them or their predecessors with the erection of any fences obstructing South Shore Drive or the other roads. But at best, there is only a conflict of evidence which was properly resolved by the trial court. One witness testified that a fence blocked the drive at various points and prevented access thereto. A first section of the fence, it was said, was built in 1933 and the rest at "different times," the last being put up in 1938. Another witness testified to his constructing the fences at the direction of Jensen, the defendants' father and predecessor in title. While the evidence concerning who built which fences, and when, is somewhat conflicting, we believe there was sufficient evidence from which the trial court could properly infer that the defendants or their predecessor in title, as alleged, caused the obstructing fences to be erected.

The defendants further contend that there is no showing of decrease in property values or enjoyment of the plaintiffs' property. But special damage need not be shown as such. Those who purchase lots in a platted subdivision by deed with reference to a subdivider's plat dedicating roadways have, at least against him and his successors, a right to have those ways kept open regardless of special damages or injury. (*Welter* v. *Eaton,* 366 Ill. 143.) The sale and conveyance of lots according to the recorded plat implies a covenant that the streets and other public places indicated thereon shall be forever open to the use of the public, free from all claim or interference by the owner of the platted tract or his successors in title. (*Stevenson* v. *Lewis,* 244 Ill. 147; *Marshall* v. *Pfeiffer,* 314 Ill. 286.) Accordingly, it is held that the owner and those claiming through him are estopped to deny or interfere with the existence and continued use of the streets by the lot owners.

*Welter* v. *Eaton,* 366 Ill. 143; *Corning & Co.* v. *Woolner,* 206 Ill. 190.

In the same way, the defendants argue that because the drive is virtually impassable, with brush and trees, an unbridged creek, and no recent grading, the plaintiffs will not benefit from a removal of the obstructing fences. But the plaintiffs have a right to the use of the dedicated way. Removal of the fences may indeed be only a first step, but it is a necessary step. And it is not for the defendants to impede the implementation of such a right by showing that its full enjoyment may be otherwise rendered difficult.

Finally, for the defense of limitations and *laches,* the defendants shift from a claim of no obstructing fences to a contention that the plaintiffs have allowed the road to be "fenced in with defendants' farm." They say that the testimony of certain plaintiff witnesses, notably one Sam Hall, shows a fence across the road before March, 1932. So, it is argued, since "fences would not be erected during the winter months," it must have been there since the fall of 1931 or more than 20 years before December, 1951, when this suit was filed. The argument ignores other testimony as to when the fences were constructed, as related above; and we do not believe the trial court erred in finding the limitations and *laches* defense to be unsubstantiated on the evidence.

The decree of the circuit court of Kankakee County is affirmed.

*Decree affirmed.*