MARIE O. KING *et al.*, Plaintiffs-Appellees, *v.* JULIO J. CORSINI *et al.*, Defendants-Appellants.

(No. 73-116;

Third District—September 22, 1975.

Peter F. Ferracuti & Associates, of Ottawa, for appellants.

Harland Warren, of Warren, Hayner & Baxter, of Ottawa, for appellees.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Plaintiffs, on August 1, 1972, filed a three-count complaint seeking to enjoin defendants from obstructing a certain roadway which defendant Julio Corsini had barricaded on July 14, 1972. After hearing, the trial court found in favor of plaintiffs, declared the roadway-in-question a public highway by prescription and enjoined defendants from obstructing it.

On appeal, defendants contend (1) that the trial court erred in not allowing count 2 of plaintiffs' complaint, dismissed prior to trial, to be admitted as an admission against interest, and (2) that the trial court's finding (that the roadway was a public highway by prescription) was against the manifest weight of the evidence.

██ In count 1 of the unverified complaint, five plaintiffs, including Marie King, alleged that the roadway in question was a public road by prescription arising from its open, notorious, and continuous use for more than 25 years. In count 2, Marie King individually pled a separate cause of action as she is entitled (Ill. Rev. Stat. 1971, ch. 110, § 43(1),) and there alleged her right to use of the road by virtue of a verbal easement granted to her by Attilio, Mary, Joseph, and Maxine Corsini. Count 2 was inconsistent with count 1 but it was nevertheless permissible. (Ill. Rev. Stat. 1971, ch. 110, § 43(2).) Plaintiffs' motion to dismiss counts 2 and 3 (the latter irrelevant to any issue on appeal) was granted by the trial court without objection by defendants.

At the hearing on count 1, defendants attempted to introduce count 2 as an admission against Marie King in that her claim therein (that she was granted a verbal easement) was contrary to her claim in count 1 (that her use of the roadway and the general public's use was without the consent of defendant). The trial court sustained plaintiffs' objection to this attempt, and defendants claim that the trial court's ruling was error.

██ In *Schusler v. Fletcher*, 74 Ill.App.2d 249, 256 (1966), we held that in light of the provision of section 43(2) (authorizing alternative pleadings), the rule is that *unverified* alternative pleadings should not be admissible for impeachment or as an admission against interest. We adhere to that decision and hold that the court did not err by refusing to allow the introduction of statements contained in count 2.

██ Even assuming arguendo that count 2 was admissible, any admission contained therein would bear only on the weight accorded the testimony of the individual witness. The claim of the four other plaintiffs would not have been affected by a verbal agreement granted to Marie

King. It is apparent therefore that, had the court's unwillingness to admit count 2 into evidence been error, it would have been harmless.

The road in question runs in a north-south direction adjacent to the Ottawa airport and connects the east-west thoroughfares of Evans Street and an Ottawa Township road. Since 1967, defendants have been the record owners of the land over which the road runs and, prior to that time, one of the defendants, Julio Corsini had leased the land from his father.

Plaintiffs introduced testimony of 14 witnesses, 3 of whom were parties to the action. One of plaintiffs' witnesses stated he received permission from Julio Corsini's father to use the road while others testified that they had never asked for nor received permission. One witness stated that he did not even know who Mr. Corsini was. The evidence established that there have never been any homes or businesses located on the roadway, yet virtually every witness, including Mr. Corsini, testified to seeing traffic on this road at various times. The traffic, therefore, was not of a local nature and it was established, consistent with the testimony of several witnesses, that the road was used by the general public as a "shortcut" to Ottawa.

Defendant introduced testimony of three witnesses, one being a party to the action. Julio Corsini introduced pieces of a sign which he testified was posted along the road. The sign stated "Airport Property—Private—Keep Out." Two witnesses testified to having seen a sign posted for a brief period of time, although one was uncertain what the sign said. There was testimony that the sign had no affect whatever on the use of the road inasmuch as the quantity of traffic did not decrease while the sign was up. Several witnesses stated they never saw a sign on the road, while others stated the sign they saw concerned a caution to motorists about the airport runway.

Defendant Corsini also testified that, upon advice of counsel, he had placed a tractor/mower across the road for a 24-hour period each July 4 beginning in 1963 and with the exception of 1 year. To corroborate his story, he introduced a piece of paper with alterations on it, showing dates and hours he put the tractor on the road. None of the other witnesses, including defendants' own, ever saw the tractor.

In 1957, the National Academy of Sciences, a private corporation, improved the road with a blacktop surface pursuant to an unrecorded lease with Julio Corsini. Two of defendants' witnesses testified that resurfacing took from 4 to 6 weeks and that no one was permitted to travel on the road during this time. Plaintiffs' witnesses testified, however, that their use of the road was uninterrupted during the time the road was being improved. One of these witnesses was the Ottawa Township Road Com-

missioner who stated that he went by the road every day and never saw it closed. He also testified that as long as 30 years ago he was grading this road while an employee of the County Highway Department and that he ditched the road in 1953 or 1954.

Defendants presented testimony that the road has not run along its present course for the requisite 15-year period. Twelve witnesses, however, testified that the location of the road has been virtually the same since at least 1956, and a few stated that it had been the same for an even longer period of time.

■■ Defendants contend that it was against the manifest weight of the evidence to find the road a public highway by prescription in that its use was permissive, the public's use of the roadway was not continuous and uninterrupted, and plaintiffs failed to prove that the public use was confined to a definite and specific line of way.

> "The test in determining whether a road has become a highway by user is whether or not the public, generally, had the free and unrestricted right in common, to use the road. Where a road has been shown to have been openly and notoriously used as an open public highway in common by all the people for the statutory period, it will be considered a public highway. [Citations.] In determining whether a strip of ground has become a public highway * * * the test is not the number of persons actually using it, but the character of the use,—that is, whether or not the public, generally, had the free and unrestricted right to use the road. [Citation.] Where a roadway is shown to have been used and enjoyed by the public for the time required by statute, a presumption arises that such grant or use was prescriptive, and the burden is on one denying the existence of a public highway to show that the use was under some license or indulgence inconsistent with the claim of the right by the public." *Van Amburg v. Reynolds*, 372 Ill. 317, 322-23 (1939); *Foster v. Wills*, 13 Ill.App.3d 127, 130 (1973).

The evidence does not support defendants' claim that the public use of the road was permissive. Many witnesses testified to using the road without permission, and those testifying appeared to be only a fraction of the persons who used the road inasmuch as virtually all witnesses saw traffic on the road at various times of day and periods of the year.

■■ Defendants next contend that there was no adverse claim of right on behalf of the public sufficient to place defendants on notice that their roadway was being claimed as a public highway. They contend that, in fact, there was no claim of right whatsoever. The adverse claim of right need not be in words or by declaration nor is the landowner

required to admit that he has knowledge of the adverse claim of right. Rather, this knowledge may be inferred from the manner, character and frequency of the exercise of the right. (*Thorworth v. Scheets*, 269 Ill. 573, 581-82 (1915).) By his own testimony Julio Corsini established that he was aware of the public's use of the road and that the use was without his consent. He testified that in 1962, he consulted with an attorney to find out what steps he should take to stop the use of his property as a public road; that upon advice of counsel, every July 4 with the exception of 1 year, he parked a tractor and mower across the road, the vehicle bearing a sign stating "Road Closed"; and that in 1963 or 1964 he put up a sign stating "Private road—no trespassing." The fact that many witnesses saw neither the sign nor the tractor is irrelevant to this issue. Relevant is the fact that defendants knew of and did not consent to the public's use of the road.

■■■ Defendants also argue that a public highway was not established because the use was not continuous and uninterrupted for 15 years. Although there was some testimony that the road was blocked for short periods of time, the overwhelming evidence established that use of the roadway was generally free and uninterrupted. Slight or occasional use of the land by the owner does not constitute an interruption of the public use. Intermission is not interruption. Rather, the law requires that the claimant of the right of way acquiesce in the interruption in such manner as to make the subsequent use merely permissive. By obstructing a highway, an individual cannot divest the public of its right to traverse unless the obstruction is submitted to for such a period of time as to raise a fair presumption of abandonment. (*Verh v. Morris*, 410 Ill. 206, 212 (1951).) We agree with the trial court that any interruption, including those for the repair of the road, were not of such character as would amount to abandonment by the public or cause the public's loss of the right to use the road.

■■ Defendants' finally claim that plaintiffs failed to prove that public use of the roadway was confined to a definite and specific line of way. As with other testimony presented in this case, evidence on this point was conflicting. Defendants' witnesses stated that the original road was a single lane and jogged east of the present road at one point. Other testimony, however, was that the road has been in substantially the same location for a minimum of 15 years. It is not necessary that all vehicles traveling a public highway use the same exact rut; the roadway is established if the use was over substantially the same strip. *Van Amburg v. Reynolds*, 372 Ill. 317, 322 (1939).

We find that the evidence presented to the trial court clearly, positively and unequivocally established the public's prescriptive right to the road-

way. (*Kurz v. Blume*, 407 Ill. 383, 387 (1950).) The court's ruling was not clearly and palpably against the weight of the evidence. *Van Amburg v. Reynolds*, 372 Ill. 317, 319 (1939); *Walden v. Bourn*, 10 Ill.App.3d 289, 293 (1973).

■■ In their brief, plaintiffs contend that the trial court erred in holding that the roadway obtained by prescription did not include the ditches on both sides of the roadway. Since plaintiffs did not file a cross-appeal on this issue, this court will not consider the claim.

Judgment affirmed.

RECHENMACHER, P. J., and DIXON, J., concur.