NATIONAL BOULEVARD BANK OF CHICAGO *et al.*, Plaintiffs-Appellants, *v.* THE DEPARTMENT OF TRANSPORTATION *et al.*, Defendants-Appellees.

First District (5th Division)    No. 63145

Opinion filed September 24, 1976.—Rehearing denied November 9, 1976.

C. Jackson Darnall, of Franklin Park, for appellants.

William J. Scott, Attorney General, Richard E. Dowdle, Henry L. Hyde, and Nicholas S. Limperis, all of Chicago (Leonard W. Golan, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs appeal from an order finding a 13.3-foot strip of their property to be a public highway by prescription as a result of having been used as a public way for vehicular traffic for 15 years, and denying plaintiff's request for injunctive relief. On appeal, they contend the judgment is against the manifest weight of the evidence.

Plaintiffs as owners and beneficiaries of two adjoining tracts of land located at the southwest corner of Scott Street and Grand Avenue in the Village of Franklin Park filed their complaint for an injunction to restrain the defendants from interfering with their use, enjoyment and possession of the east 13.3 feet of parcel two. They allege that the defendants have entered into a contract to improve the roadway at the intersection by placing pavement over the said 13.3 feet of their property.

Defendants answered that the strip in question had been used by the public as a roadway for 15 years prior to June, 1971, and consequently is a highway by prescription pursuant to section 2—202 of the Illinois

Highway Code. (Ill. Rev. Stat. 1975, ch. 121, par. 2—202.) In addition, defendants counterclaimed and prayed that plaintiffs be enjoined from interfering with the defendants or the public's further use of the 13.3-foot portion of the property.

The following pertinent evidence was adduced at trial.

*For plaintiffs*

*Vincent Bolger*

Since 1971 he was the owner of a 50-percent beneficial interest in the trust which owned property described as parcels one and two. Parcel two is approximately 33 feet wide and 233 feet long. It includes a 5 foot 2 inch sidewalk, several concrete stops for parking, a 14-foot area recently paved with black top, and another area of approximately 10 feet previously paved. The 13.3-foot strip in question is the easternmost portion of the parcel. Scott Street, a north-south street, is a two-lane road abutting parcel two south from Grand Avenue.

He had observed cars parked perpendicular to the building on parcel two approximately 100 times over 21 years. He striped the area from the building line approximately 30 feet 6 inches.

In 1973 the Village's consulting engineer indicated that the Scott Street improvement would include part of parcel two. On May 2, 1975, defendants' job superintendent, Mike Johnson, stated that the improvement would come within one foot of the building located on parcel one. He did not know if parked cars would prevent traffic on Scott Street from travelling in a straight line with the eastern edge of a sidewalk beginning at the next intersection to the south at Greenfield. He did not know if the previous owners had ever placed any signs indicating that the black top area was private property on the 13.3 feet in question. He always drove his automobile as far to the eastern side of Scott Street as possible to avoid collisions with vehicles parked on the 13.3-foot-portion of parcel two.

Defendants stipulated that they would not encroach within 20.7 feet of the building and agreed that only 13.3 feet from the center of the section line would be taken from parcel two.

*Nicholas Raimondi*

He surveyed this area in 1965 and observed cars moving north and south along Scott Street. There were two lanes of pavement and the street was approximately 35 to 36 feet wide. He did not need flagmen to divert traffic during the three days he was surveying along the section line. Power poles and parked cars prevent traffic from travelling over the 13.3-foot area in dispute. To the south of the 13-foot area on an undeveloped tract of land, there was a warning sign and a power pole respectively located 17 feet and 24 feet west of the section line.

*Stewart Bauer*

He was a 30-year resident of Franklin Park. He drove his wife to her job at a savings and loan business which occupied the building on parcel one and met her after work for seven or eight years starting in 1955. He could not recall when the parking area was paved. The power pole to the south of the property was the only obstruction to prevent traffic from travelling south over the paved area of parcel two.

*Nick Zographos under section 60*

He was the consulting engineer for defendants Peco and Associates and the Village. Although the Sidwell map showed parcel two as having a real estate index parcel number, he still did not believe that Vincent Bolger owned the parcel. He denied that the 13.3-foot strip taken for the proposed roadway south of Grand Avenue was derived because the existing roadway north of Grand Avenue was 13.3 feet west of the section line. He had observed traffic use the 13.3-foot strip at least once a week. He admitted a line running from the west curb north of Grand Avenue to the sidewalk south of Greenfield would be close to 13.3 feet west of the section line and that the existing parking stripes would extend over this line and further to the east. Traffic passed 11.8 feet east of the curb stops whenever there were no cars parked, but swayed away from that point if cars were parked. He never saw any signs or barricades restricting traffic from travelling west of the section line on plaintiffs' parking area.

*For defendants*

*David Bradshaw*

He had lived in the fourth house south of Grand Avenue on Scott Street since 1948. There has never been any permanent obstructions or barriers placed immediately east of the parking area. He had observed three lanes of traffic on Scott Street while cars were parked on plaintiffs' property. In 1948, traffic drove on the crushed stone to the west of the paved portion of Scott Street. He admitted that Scott Street was "set up" for two lanes of traffic.

*Helen Christensen*

She had lived in the Village near plaintiffs' property since 1944. Scott Street was paved in the late 1940's and could accommodate one and one-half vehicles at the same time. She had driven over plaintiffs' property and had seen others drive over it. Parked vehicles on the property did not prevent traffic from passing through. Barricades to prevent traffic were never placed 14 feet east of the proposed curb line. She admitted that she was not a good judge of distances.

*Helen Schutte*

She had lived in the sixth house south of Grand Avenue on Scott Street since 1951. She had driven over plaintiffs' property. She never observed

any barricades in the area. She parked her family's third automobile on the property because traffic moved over the paved portion of Scott Street directly in front of her house making parking at her house dangerous. She did not know the length of her car nor how far east it extended when parked next to plaintiffs' building. There was room for three cars to travel on Scott Street when the car was parked.

*Henry Spaak*

Since 1953 he had lived at the southwest corner of Scott and Greenfield. He drove over the 14-foot area and observed others drive over it as well. He never observed any barricades within the 14-foot area. He admitted that parcel two was used mostly for parking and for access to the building. Normal business hours at the building included evenings. When cars were parked at the building, traffic passed four to six feet away from the back of the cars.

*Ralph Spana*

He had been a Village employee for 18 years. He snowplowed the "extreme widths" of Scott Street in the winter and patched chuckholes in the summer. He never saw barricades on the 14-foot strip. He never owned a car nor parked a car on plaintiffs' property. He had observed cars parked on parcel two.

Thereafter, the parties stipulated to the admission of documents showing the average length of various automobiles to range from approximately 14.6 feet to 19.2 feet and recommending 18 feet for functional parking of vehicles at a 90° angle.

*Nick Zographos on defendants' behalf*

The existing stripe down Scott Street was in line with the center line of Scott Street south of Greenfield. He later admitted that the striping was no longer visible. Although the project drawings showed a 66-foot right-of-way which would come within one foot of plaintiffs' building, the drawings were inaccurate, and the actual right-of-way would be 20.7 feet from the building line. He again admitted that he swayed away from cars parked on parcel two to avoid collisions.

*For plaintiffs on rebuttal*

   *Bernice Boregard*

She had lived two blocks south of Grand Avenue on Scott Street from 1949 until 1955. Scott Street was paved for two lanes of traffic. There was ample room to back out from a parking space next to the building and to turn north without interfering with southbound traffic on Scott Street.

After both sides had rested, the trial court specifically found the 13.3-foot strip to be a highway by prescription by virtue of the public's use "under a claim of right, adverse, open, notorious, exclusive, continuous, and uninterrupted over a well defined line of travel" and entered the order previously discussed.

OPINION

■■  Plaintiffs contend that the manifest weight of the evidence did not prove the 13.3-foot strip of parcel two was a highway by prescription. Section 2—202 of the Illinois Highway Code provides in part that any public way for vehicular traffic which has been used by the public as a highway for 15 years shall be a highway for purposes of the Code. (Ill. Rev. Stat. 1975, ch. 121, par. 2—202.) The courts of this State have required the public's use to be along a definite and specific line of travel, without the consent of the actual owner who actually or presumptively knows of the adverse use, under claim of right by the adverse user, and in a continuous and uninterrupted manner. (*Taylor v. Wentz* (1958), 15 Ill. 2d 83, 153 N.E.2d 812; *King v. Corsini* (1975), 32 Ill. App. 3d 461, 335 N.E.2d 561.) This court will not reverse a trial court's judgment that a particular tract is a highway by prescription unless it is against the manifest weight of the evidence. *Batchelder Co. v. Gustafson* (1975), 32 Ill. App. 3d 14, 335 N.E.2d 565.

In the instant case, we believe the trial court's findings were against the manifest weight of the evidence. Defendants failed to prove that the public used the 13.3-foot strip as a definite and specific line of travel and in a continuous and uninterrupted manner. Defendants' own witnesses admitted that they were confused as to distances and that the area was used for parking. They alternately described Scott Street as being designed and used for one and one-half, two and three lanes of traffic. The Village maintenance man could only state that he serviced the "extreme widths" of Scott Street, but he did not detail what was included within his perception of the street's width. Before a legal presumption arises in defendants' favor based upon public use of a parcel as a roadway, we believe defendants' evidence must clearly show a definite and specific line of travel. Defendants' witnesses failed to sustain that burden, and, at best, only showed that some smaller, more irregularly shaped area might have been used.

Most importantly, even if we assumed a 13.3-foot prescriptive highway, traffic would, of necessity, collide with vehicles parked perpendicular within the remaining area of parcel two because the area currently available for parking is shorter than the stipulated length of various automobiles by several feet and five feet shorter than the stipulated recommended length for perpendicular parking. Moreover, defendants' consulting engineer testified that traffic had to swerve away from vehicles parked next to the building. Thus, the actual flow of traffic, if any, was moved even farther to the east and taken out of a straight line of travel. Furthermore, Bernice Boregard stated there was ample room to back out of a parking space without interfering with traffic on Scott

Street. Thus, public use of 13.3 feet of plaintiffs' property as a definite and certain line of travel cannot be sustained by the evidence.

■■ We recognize that a vehicle need not travel in the exact ruts left by earlier vehicles and that the width of a prescriptive highway can include some land needed to make the highway effective. (*City of Highland Park v. Driscoll* (1962), 24 Ill. 2d 281, 181 N.E.2d 93.) However, we believe defendants had the burden to prove use along some definite line of travel before any adjoining footage could be added to make the highway effective, and defendants did not meet this burden.

Similarly, the manifest weight of the evidence shows the public could not have used the 13.3-foot strip in a continuous and uninterrupted manner. Plaintiffs clearly intended to use parcel two for parking to facilitate the businesses renting space in the building on parcel one. The area was blacktopped, striped, and supplied with cement curb stops to encourage customer parking. As previously discussed, this parking interfered with the public's use of the easternmost 13.3-feet strip. The evidence clearly showed that this interruption of the public's use was more than an occasional intermission, and regularly occurred during daylight and evening hours. Thus, the evidence also fails to show the use of the 13.3-foot strip was continuous and uninterrupted as required.

For the reasons stated, we reverse the judgment of the circuit court and remand this cause for further proceedings to determine the appropriate relief due plaintiffs.

Reversed and remanded.

SULLIVAN and BARRETT, JJ., concur.