NOTICE
Decision filed 06/20/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230879-U

NO. 5-23-0879

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 22-CF-215 |
| | ) | |
| ARIAN D. CLARK, | ) | Honorable |
| | ) | Derek J. Girton, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice McHaney and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the defendant's conviction where the evidence was sufficient to sustain his conviction. We affirm the defendant's sentence where the trial court did not consider an improper factor.

¶ 2    The defendant, Arian D. Clark, appeals his conviction and sentence, following a trial by jury in the circuit court of Vermilion County, for one count of aggravated driving after revocation, a Class 3 felony. On appeal, the defendant argues: (1) that his conviction should be reversed because the State failed to prove beyond a reasonable doubt that he operated a motor vehicle on a highway of the State of Illinois; (2) alternatively, if the evidence was sufficient to sustain his conviction, the defendant contends that he is entitled to a new trial because the jury was not property advised as to what the State had to prove; and (3) the trial court considered an improper

1

factor when sentencing the defendant. For the following reasons, we affirm the defendant's conviction and sentence.

¶ 3                                   I. BACKGROUND

¶ 4     On August 2, 2021, the defendant was involved in a car accident with Rylee Merrill. On May 2, 2022, the defendant was charged, by information (and later by indictment), with one count of aggravated driving after revocation (DWLR), a Class 3 felony. The matter proceeded to a one day jury trial on July 18, 2023.

¶ 5     The State gave a brief opening statement which summarized the expected testimony. The first witness to testify on behalf of the State was Rylee Merrill. Merrill testified that on August 2, 2021, she was driving to work at Applebee's when she was involved in a car accident. The following colloquy occurred regarding the car accident:

"Q. MR. GENT [(ASSISTANT STATE'S ATTORNEY)]: Specifically, August 2nd of 2021, did you get in a car accident while going to work at Applebee's?

A. Yes.

Q. So what road were you driving on to Applebee's when you were in the accident?

A. Poland.

Q. Which direction were you heading from?

A. I was coming, like, towards North Vermilion.

Q. And where on Poland did the accident occur?

A. In between the alley between Applebee's and the Rock Church.

Q. And what was happening? How did the accident actually happen? What was happening when it happened?

2

A. I turned—I had my turn signal on and I was slowing down and the car behind me was not slowing down and I was hit from behind."

Merrill testified that the vehicle that hit her car was a black truck Escalade. She identified the defendant in open court as the person who had been driving the black truck at the time of the car accident.

¶ 6 Merrill testified that after the impact occurred, she stayed in her car and called law enforcement. She testified the other vehicle drove to the side to the alleyway behind Robinson Chiropractor. Merrill testified that she interacted with the defendant at the scene for approximately five minutes. She stated that the defendant asked if she was alright, and she answered affirmatively. The defendant provided Merrill with his automobile insurance card, which she took a photograph of. Merrill also photographed the vehicles at the accident scene. Merrill identified People's exhibit 4 as a photograph of the defendant's automobile insurance card, People's exhibit 5 was the rear of her vehicle, and People's exhibits 6 and 7 as photographs she took of the defendant's vehicle. The four photographs were admitted into evidence. Merrill testified that the defendant "asked me not to call the cops and then he left. He just said he had to go."

¶ 7 On cross-examination, counsel clarified that the defendant first checked on Merrill, provided his insurance information, and allowed photographs before he left the scene. Defense counsel also inquired, "Mr. Clark also suggested going to the side of the *road*; is that right?" (Emphasis added.) Merrill answered affirmatively.

¶ 8 The next witness to testify on behalf of the State was Cory Frahm, a Danville police officer. The State inquired if Frahm, on August 2, 2021, had been "called to the Poland Drive over by the Applebee's," he replied affirmatively. There, he met with "Rylee," who showed him the back of her car, explained what had happened, and showed him the insurance card that the defendant had

given her. The State offered, and the court admitted into evidence, self-authenticating certified documents from the Illinois Secretary of State showing that on August 2, 2021, the defendant's license was revoked.

¶ 9　At the close of the State's case in chief, defense counsel moved for a directed verdict and argued that the State had failed to prove that the road on which the defendant drove was a "highway." The court denied the motion. The defendant did not present a case in chief.

¶ 10　Prior to closing arguments, defense counsel made an oral motion *in limine* that the State be prohibited from "arguing or stating that Poland Road is a highway of this State" when it failed to elicit any such evidence in the presence of the jury. The court opined and ruled as follows: "I would agree that it would probably be excellent practice on the part of the State to ask the officer at some point if Poland Road is in fact a public road, but I think that it is well understood within the community of this community [*sic*] that there is no question but that Poland Road is a public road and I will deny that motion."

¶ 11　In closing arguments to the jury, the State argued that it had proven both of the elements of DWLR. Defense counsel argued that the State had failed to prove that the defendant drove on a highway.

¶ 12　In its instructions to the jury, the court stated that "[i]t is your duty to determine the facts and to determine them only from the evidence in this case." See Illinois Pattern Jury Instructions, Criminal, No. 1.01 (approved July 18, 2014). The court also stated: "The evidence which you should consider consists only of the testimony of the witnesses and the exhibits which the Court has received. You should consider all the evidence in the light of your own observations and experience in life." See *id.* In the issues instruction, the court instructed the jury that the State needed to prove two propositions in order to prove the defendant guilty of DWLR: (1) "that the

defendant drove a motor vehicle on a highway of this state" and (2) that at the time he drove the vehicle, his driver's license was revoked. See Illinois Pattern Jury Instructions, Criminal, No. 23.40 (4th ed. 2000). There was no instruction defining the term "highway," and neither party had offered such an instruction.

¶ 13    After a half-hour of deliberation, the jury returned a verdict finding the defendant guilty.

¶ 14    In his posttrial motion, the defendant claimed, *inter alia*, that the State failed to prove that he had been driving on a highway. At a hearing on the motion, the judge stated as follows: "Poland Road was described. Poland Road is not one of the major thoroughfares through Vermilion County, but it is one of the major side streets on—in Danville. This is a small county. Roads are well known to the public. And the jury being from Vermilion County, I think, would be well aware that Poland Road is, in fact, a public road." The posttrial motion was denied.

¶ 15    A sentencing hearing immediately followed. The State did not present any evidence in aggravation and only made a proffer and argument. In mitigation, the defense presented several letters from individuals writing to support him, as well as mental health records, and photographs. The first witness to testify on behalf of the defendant was Trey Davis. Davis, age 29, testified that he has lived in Vermilion County his entire life and had known the defendant since approximately 2000. Davis read a statement he had prepared regarding the defendant. Davis stated the defendant has been a safe haven for him throughout his childhood and he had a positive impact on his life. It was Davis's opinion that the community would be better served to have the defendant in it instead of in prison.

¶ 16    Next, Erik Felix testified on behalf of the defendant. Felix testified that he was 56 years old and had known the defendant since he was in the sixth grade when the defendant played basketball with Felix's brother. Felix testified that for the past six to seven years he has spoken to

5

the defendant daily. He testified that the defendant has changed in the past 12 to 13 years. He donates money and time to the community. Felix testified that the defendant is a public figure that children gravitate to and listen to. Felix believed that the community would be better with the defendant in it versus incarceration.

¶ 17 Next, the defendant made a statement in allocution. The defendant began his statement by playing a video of a traffic stop he was involved in. He testified that when he was released from prison in 2017, he took the necessary steps to have restricted driving privileges reinstated. He played the video and explained it as wanting the court to see what the defendant has had to deal with for 20 years. The defendant testified regarding his problems adjusting to life in Vermilion County. He also testified regarding an alcohol problem, and testified he had been sober for over a year now. The defendant continued to testify regarding his encounters with law enforcement while he was driving. His counsel explained it was a relevant sentencing factor of "substantial grounds tending to excuse or justify the defendant's criminal conduct though failing to establish a defense."

¶ 18 The defendant testified regarding his time playing basketball and being drafted to the NBA. He also presented photographs from basketball. The defendant testified about a vehicle that cost $210,000 and took him five years to purchase that was evidently seized from a different incident.

¶ 19 After hearing arguments from counsel, the trial court noted the defendant was convicted of a Class 3 felony which was non probational based on criminal history and extended term eligible. In mitigation, the trial court noted that the defendant had a very difficult childhood, he had a history of substance abuse, and mental health problems. Also, the trial court noted that an accident happened and the defendant was not intending to cause anyone physical injury or property damage. The trial court also noted the defendant's history of driving while his license was revoked, and that he had previously been sentenced to prison for the same crime. The court sentenced the defendant

6

to imprisonment for seven years, to be followed by six months of mandatory supervised release. This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, the defendant argues, *inter alia*, that his conviction for DWLR should be reversed because the trial evidence failed to establish that he drove a motor vehicle on a highway. Additionally, he argues that he was denied his right to a fair sentencing hearing.

¶ 22                                    A. Conviction

¶ 23    The due process clause of the fourteenth amendment (U.S. Const., amend. XIV) protects a defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The State "has the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime." *People v. Weinstein*, 35 Ill. 2d 467, 470 (1966). "[T]he State may not leave to conjecture or assumption essential elements of the crime." *People v. Laubscher*, 183 Ill. 2d 330, 335-36 (1998). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 24    When challenging the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." (Emphasis in original.) *Id.*

¶ 25    "[T]he reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "A reasonable inference within the purview of the law must have a chain of factual evidentiary antecedents. If an alleged inference does not have a chain of factual evidentiary antecedents, then within the purview of the law it is not a reasonable inference but is instead mere speculation." *People v. Davis*, 278 Ill. App. 3d 532, 540 (1996).

¶ 26    In regard to the specific crime at issue in this case, a person is guilty of DWLR, in violation of section 6-303 of the Illinois Vehicle Code (Code), if (1) he drove or was in actual physical control of a motor vehicle "on any highway of this State" and (2) his driver's license was revoked at that time. 625 ILCS 5/6-303 (West 2020). So, the State must prove only two facts to establish a violation of section 6-303 of the Code, *viz.*: (1) that the defendant drove a motor vehicle on a highway, and (2) that his driver's license was revoked at the time. *People v. Turner*, 64 Ill. 2d 183, 185 (1976).

¶ 27    The term "highway" is defined as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel or located on public school property." 625 ILCS 5/1-126 (West 2020). Public maintenance and public use of the road, along with public ownership, are strong indicators that the road is a "highway" within the meaning of section 6-303(a) of the Code. See *Verh v. Morris*, 410 Ill. 206, 211-12 (1951); *People v. Culbertson*, 258 Ill. App. 3d 294, 297 (1994).

¶ 28    When viewing the evidence in the light most favorable to the prosecution, there is no doubt that on the day of the alleged offense—August 2, 2021—the defendant's license was revoked. At trial, self-authenticating certified documents from the Illinois Secretary of State established as much. There was also testimony that vehicle the defendant was operating collided with Merrill's

8

vehicle on "Poland" or "Poland Road" or "Poland Drive." Photographs depicting the defendant's vehicle on a road with a marked stop sign were admitted into evidence. Further, when evaluating the evidence and making reasonable inferences therefrom, "jurors are entitled to take full advantage of their collective experience and common sense," which would include their familiarity with public roadways. *People v. Rudd*, 2020 IL App (1st) 182037, ¶ 58. Accordingly, we find the evidence was sufficient to convict the defendant of DWLR and affirm his conviction.

¶ 29    As alternative arguments, the defendant contends if the evidence was sufficient, he should be given a new trial because the jury was incorrectly informed regarding what the State had to prove, or he should be given a new trial because his counsel was ineffective for not instructing the jury as to the definition of a "highway." As these two contentions are closely related, we will examine them together.

¶ 30    The defendant acknowledges that the issue of whether the jury was correctly informed of the elements was forfeited and seeks review under the first prong of plain error. The first step in the plain error analysis is to determine whether error occurred at all. *People v. Sargent*, 239 Ill. 2d 166, 189-90 (2010).

¶ 31    Allegations of ineffective assistance of counsel are reviewed pursuant to the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Cathey*, 2012 IL 111746, ¶ 23. For a claim of ineffective assistance of counsel, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To prevail on an ineffective-assistance-of-counsel claim, a defendant must demonstrate both that counsel's performance fell below an

objective standard of reasonableness and that counsel's deficient performance resulted in prejudice. *Id.* at 687-88.

¶ 32    We begin our analysis of the defendant's alternative arguments by first determining if an error occurred. In this case, the defendant points to the State's opening statement for the contention the jury was not properly informed as to the elements. However, the jury instructions provided:

> "To sustain the charge of driving while driver's license is revoked, the State must prove the following propositions: First proposition, that the defendant drove a motor vehicle on a highway of this state. And second proposition, that at the time the defendant drove a motor vehicle his driver's license was revoked as provided by the Illinois Vehicle Code or the law of another state."

¶ 33    Jury instructions are used to give the jurors the applicable law so they can apply it to the facts and reach a correct conclusion. *People v. Hopp*, 209 Ill. 2d 1, 7 (2004). "Jury instructions should not be misleading or confusing [citation], but their correctness depends upon not whether defense counsel can imagine a problematic meaning, but whether ordinary persons acting as jurors would fail to understand them." *People v. Herron*, 215 Ill. 2d 167, 187-88 (2005). "The task of a reviewing court is to determine whether the instructions, considered together, fully and fairly announce the law applicable to the theories of the State and the defense." *People v. Mohr*, 228 Ill. 2d 53, 65 (2008). "Jury instructions should be construed as a whole, rather than read in isolation." *People v. Parker*, 223 Ill. 2d 494, 501 (2006).

¶ 34    When viewing the jury instructions as a whole, we find the jury in this case was properly instructed as to the elements the State was required to prove. Accordingly, there was no error that would allow plain error review to proceed nor was there an error that could be evaluated to determine whether counsel was ineffective.

¶ 35                                    B. Sentencing

¶ 36    Next, the defendant argues that he was denied a fair sentencing hearing because the trial court considered an improper factor when sentencing him. Specifically, the defendant contends that the trial court considered that the defendant had been previously convicted of DWLR "in excess of 15" times.

¶ 37    The defendant acknowledges this issue was not raised in the trial court and was forfeited. However, he seeks review of the alleged error under plain error review. Our Supreme Court has recognized that the consideration of an improper factor in sentencing affects the defendant's fundamental right to liberty and is subject to second prong plain error review. *People v. Martin*, 119 Ill. 2d 453, 458-60. (1988). Having determined that this claim is subject to plain error review, we must determine if the circuit court relied upon an improper factor.

¶ 38    Whether the trial court relied upon an improper factor when imposing a sentence is a question of law subject to *de novo* review. *People v. Chaney*, 379 Ill. App. 3d 524, 527 (2008). Further, "a sentence based on an improper factor may be affirmed where the reviewing court can determine from the record that the weight the trial judge placed on the improperly considered factor in aggravation 'was so insignificant it resulted in no increase in the defendant's sentence.' " *People v. Brown*, 2019 IL App (5th) 160329, ¶ 19 (quoting *People v. Whitney*, 297 Ill. App. 3d 965, 971 (1998)). When we review a sentence based upon the alleged consideration of an improper factor in aggravation, "we consider the record as a whole and do not focus merely on a few words or statement from the trial judge." *Id.* ¶ 18. Additionally, "[t]he defendant bears the burden to affirmatively establish that the sentence was based on improper considerations, and we will not reverse a sentence imposed by a trial court unless it is clearly evident the sentence was improper." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 29.

¶ 39　　The defendant points to the following comments by the trial court during the sentencing hearing:

> "driving on a revoked license is a serious offense because to become revoked takes some actions on your part. People don't just lose their driver's license. You almost have to work at it to lose your driver's license. To allow somebody who's taken the steps to become revoked to just continue to drive and treat it like, well they're just driving. It's not really that big a deal, which kind of says DUI is not a big deal.
>
> I mean, commit a couple DUIs. Lose your license. Keep driving. What's the big deal? It is a big deal. It's the reason the legislature said it was a Class 3 felony after you have done it enough times. And in this case we are talking in excess of 15. It does become a big deal. That's why it's punishable by 2 to 5 years in the Department of Corrections. And once you have done it enough times to become extended term eligible, 2 to 10 years in the Department of Corrections. We are talking again about somebody who's been to the Department of Corrections for the exact same offense several times."

¶ 40　　The State counters that it is clear the trial court did not believe the defendant had 15 or more prior convictions of DWLR because the trial court commented on the correct sentencing range for a tenth violation of DWLR. If a person is convicted of a tenth, eleventh, twelfth, thirteenth, or fourteenth violation of DWLR, it is a Class 3 felony. 625 ILCS 5/6-303(d-4) (West 2020). If a person is convicted of a fifteenth or subsequent violation of DWLR, it is a Class 2 felony with a higher sentencing range. *Id.* § 6-303(d-5). Additionally, the defendant's official driving record from the Illinois Secretary of State contained more than 15 entries for driving without a valid license, statutory summary suspension, driving during a suspension or revocation, and driving while license revoked.

¶ 41    Illinois courts have long found that a trial court is in a better position to determine the sentence to be imposed, and thus, the imposition of a sentence is left to the sound discretion of the trial court, rather than a court of review, and will not be altered absent an abuse of discretion. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). We have considered the sentencing record as a whole and find the trial court did not consider an improper factor—namely an incorrect number of prior convictions.

¶ 42    In this case, the trial court did not impose the maximum penalty of 10 years' imprisonment upon the defendant. While the State recommended a sentence of six years' imprisonment, the trial court after considering the factors sentenced the defendant to seven years' imprisonment. When sentencing the defendant, the trial court considered the mitigating factors offered and commended the defendant for the recent positive changes in his life including his sobriety. However, the trial court also considered that the defendant had previously been sentenced to imprisonment for the same violation. Based on the specific facts of the defendant's cases and his criminal history, the sentence imposed was within statutory guidelines and was not disproportionate to the offenses committed. The defendant's sentence is affirmed.

¶ 43                                    III. CONCLUSION

¶ 44    For the foregoing reasons, we affirm the defendant's conviction and sentence.


¶ 45    Affirmed.

13